UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
MARSHALL FREIDUS and EDWARD P. ZEMPRELLI, :
Individually and on Behalf of All Others Similarly :
Situated, : 09 Civ. 1049 (LAK)
: and consolidated cases
                 Plaintiffs, : 09 Civ. 1284 (LAK)
: 09 Civ. 1410 (LAK)
         - against - : 09 Civ. 1820 (LAK)
: 09 Civ. 2667 (LAK)
ING GROEP N.V., et al., : 09 Civ. 3066 (LAK)
:
                 Defendants. :
:
------------------------------------------------------------------- X

## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE

Mitchell A. Lowenthal, Esq.
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Tel: (212) 225-2000
Fax: (212) 225-3999

Giovanni P. Prezioso, Esq.
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 974-1500
Fax: (202) 974-1999

Attorneys for Defendants ING Groep N.V.,
ING Financial Holdings Corp., and ING
Financial Markets LLC

Stuart J. Baskin, Esq.
Adam S. Hakki, Esq.
Herbert S. Washer, Esq.
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Tel: (212) 848-4000
Fax: (212) 848-7179

Attorneys for UBS Securities LLC, Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Wachovia Capital Markets, LLC, Morgan Stanley & Co. Incorporated, Banc of America Securities LLC, RBC Capital Markets Corporation, J.P. Morgan Securities Inc., Credit Suisse Securities (USA) LLC, HSBC Securities (USA) Inc., ABN AMRO Incorporated, and A.G. Edwards & Sons, Inc.

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| PRELIMINARY STATEMENT | | 1 |
| ARGUMENT | | 2 |
| I. | Plaintiff's Motion To Strike Is Procedurally Improper | 2 |
| II. | All Of The Challenged Documents Are Cognizable On A Motion To Dismiss | 3 |
| | A. The Court Need Not Ignore The Unprecedented Global Economic Crisis | 3 |
| | B. The Court May Consider Material Explaining The ABX And TABX Indices | 6 |
| | C. The Court Should Consider Exhibit II In Assessing The "Total Mix" of Information Available to Plaintiffs | 7 |
| CONCLUSION | | 13 |

## TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

Fed. R. Civ. P. 7(a) .................................................................................................... 2

Fed. R. Civ. P. 11 ....................................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 2, 3

Fed. R. Civ. P. 12(f) ................................................................................................... 2

Fed. R. Civ. P. 56 ....................................................................................................... 2

Federal Rule of Evidence 201(b) ............................................................................... 3, 6

Federal Rule of Evidence 201(c) ............................................................................... 1

**Cases**

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009) ............................................................................................... 1, 5

ATSI Commc'ns Inc. v. Shaar Fund, Ltd.,
493 F.3d 87 (2d Cir. 2007) ........................................................................................ 10

Basic Inc. v. Levinson,
485 U.S. 224, 108 S. Ct. 978 (1988) ......................................................................... 7

Chambers v. Time Warner, Inc.,
282 F.3d 147 (2d Cir. 2000) ...................................................................................... 10

City of Livonia Employees' Retirement Sys. v. Essner,
No. 07 Civ. 10329 (RJS), 2009 WL 1809984 (S.D.N.Y. June 25, 2009) ................. 8, 12

Condit v. Dunne,
317 F. Supp. 2d 344 (S.D.N.Y. 2004) ....................................................................... 5

Doron Precision Sys., Inc. v. FAAC, Inc.,
423 F. Supp. 2d 173 (S.D.N.Y. 2006) ....................................................................... 11, 12

Faulkner v. Beer,
463 F.3d 130 (2d Cir. 2006) ...................................................................................... 12

First Nationwide Bank v. Gelt Funding Corp.,
27 F.3d 763 (2d Cir. 1994) ........................................................................................ 3

Ganino v. Citizens Utils. Co.,
228 F.3d 154 (2d Cir. 2000) .................................................................................. 8

Garber v. Legg Mason, Inc.,
No. 08 Civ. 1831, 2009 WL 3109914 (2d Cir. Sept. 30, 2009) ........................... 1, 7

Hotel Employees & Rest. Employees Union, Local 100
 v. City of N.Y. Dep't of Parks & Rec.
311 F.3d 534 (2d Cir. 2002) .................................................................................. 11-12

In re Adams Golf, Inc. Sec. Litig.,
381 F.3d 267 (3d Cir. 2004) .................................................................................. 12

In re Alstom S.A. Sec. Litig.,
406 F. Supp. 2d 402 (S.D.N.Y. 2005) ................................................................... 2, 4

In re Bristol Myers Squibb Co Sec. Litig.,
586 F. Supp. 2d 148 (S.D.N.Y. 2008) ................................................................... 8

In re Merrill Lynch & Co. Research Reports Sec. Litig.,
273 F. Supp. 2d 351 (S.D.N.Y. 2003) ................................................................... 5

In re Merrill Lynch & Co. Research Reports Sec. Litig.,
289 F. Supp. 2d 416 (S.D.N.Y. 2003) ................................................................... 3

In re Scottish Re Group Sec. Litig.,
524 F. Supp. 2d 370 (S.D.N.Y. 2007) ................................................................... 6

In re WorldCom, Inc., Sec. Litig.,
346 F. Supp. 2d 628 (S.D.N.Y. 2004) ................................................................... 10

In re Yukos Oil Co. Sec. Litig.,
Civ. 5243 (WHP), 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) ......................... 8

Keeney v. Larkin,
306 F. Supp. 2d 522 (D. Md. 2003) ...................................................................... 8

Kramer v. Time Warner, Inc.,
937 F.2d 767 (2d Cir. 1991) .................................................................................. 3

L.C. Capital Partners v. Frontier Ins. Group,
318 F.3d 148 (2d Cir. 2003) .................................................................................. 5

Locksley v. United States,
No. 05 Civ. 2953 (JGK), 2005 WL 1459101 (S.D.N.Y. June 15, 2005) ............. 2

Nat'l Union Fire Ins. Co. v. Hicks, Muse, Tate & Furst, Inc.,
No. 02 Civ. 1334 (SAS), 2002 WL 1313293 (S.D.N.Y. June 14, 2002) ............. 2

Nix v. Hedden,
149 U.S. 304, 13 S. Ct. 881 (1893) .................................................................................. 6

SEC v. Universal Express, Inc.,
546 F. Supp. 2d 132 (S.D.N.Y. 2008) ............................................................................ 3

Shapiro v. UJB Financial Corp.,
964 F.2d 272 (3d Cir. 1992) ............................................................................................ 6

Sierra v. United States,
No. 97 Civ. 9329 (RWS), 1998 WL 599715 (S.D.N.Y. Sept. 10, 1998) ......................... 2

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
551 U.S. 308, S. Ct. 2499 (2007) .................................................................................... 3

Tracinda Corp. v. DaimlerChrysler AG,
364 F. Supp. 2d 362 (D. Del. 2005) .............................................................................. 11

United States SEC v. Power,
525 F. Supp. 2d 415 (S.D.N.Y. 2007) ............................................................................ 2

Virtual Countries, Inc. v. Republic of South Africa,
148 F. Supp. 2d 256 (S.D.N.Y. 2001), aff'd 300 F.3d 230 (2d Cir. 2002) ...................... 3

Williams v. Citibank,
565 F. Supp. 2d 523 (S.D.N.Y. 2008) ............................................................................ 5

Defendants[1] submit this memorandum of law in opposition to Plaintiffs' motion to strike certain exhibits filed in conjunction with Defendants' Motion to Dismiss.

## PRELIMINARY STATEMENT

Plaintiffs essentially ask that the CAC be read in a vacuum – with eyes and ears closed to all external context, experience, and common sense. At bottom, their motion is a concession that any hope of finding plausibility to their claims depends on doing so. But even if one were able to ignore events as relevant and as catastrophic as the global economic credit crisis, the law dictates otherwise: most broadly in Ashcroft v. Iqbal, which directs just the opposite, 129 S. Ct. 1937, 1940 (2009) ("[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense.") (citation omitted), but also more specifically as to the precise purposes for which Defendants cite the challenged materials. In particular, courts properly and routinely consider press reports and almanac-like facts both to assess the "total mix" of information reasonably available to investors and to take notice of relevant events in the broader marketplace, especially where – as here – Plaintiffs rely upon them in bringing suit. For the reasons set forth below, the documents submitted with the Motion to Dismiss may all be considered without converting the motion to dismiss into a motion for summary judgment.[2]

---

[1] Unless otherwise noted, capitalized terms shall have the same meaning as set forth in the Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Consolidated Amended Complaint ("DB"). Plaintiffs' opposition to the Motion to Dismiss will be cited herein as "PB at ___." Plaintiffs' memorandum in support of their motion to strike will be cited as "MTS at ___."

[2] Plaintiffs criticize Defendants for not formally requesting that judicial notice be taken as to certain exhibits. But they ignore that Defendants specifically addressed this point in the Motion to Dismiss. See DB at 41 n.50 (citing Staehr v. Hartford Fin. Servs. Group, 547 F.3d 406 (2d Cir. 2008)). See also Garber v. Legg Mason, Inc., No. 08 Civ. 1831, 2009 WL 3109914, at *3 (2d Cir. Sept. 30, 2009) ("The fact that defendants did not formally file a request for judicial notice is not relevant, as Federal Rule of Evidence 201(c) provides that '[a] court may take judicial notice, whether requested or not.'").

# ARGUMENT

## I. Plaintiffs' Motion To Strike Is Procedurally Improper

As a threshold matter, Rule 12(f) provides the methods by which a court may strike matters "from a pleading." Fed. R. Civ. P. 12(f) (emphasis added). Neither motions to dismiss nor affidavits are pleadings under the Federal Rules. See Fed. R. Civ. P. 7(a) (defining pleadings as complaints, answers, answers to counter- and cross-claims, and third-party complaints and answers). As such, courts have recognized that "the filing of a motion to strike . . . is not a proper way to challenge a motion to dismiss." Sierra v. United States, No. 97 Civ. 9329 (RWS), 1998 WL 599715, at *9 (S.D.N.Y. Sept. 10, 1998); see also Locksley v. United States, No. 05 Civ. 2953 (JGK), 2005 WL 1459101, at *4 (S.D.N.Y. June 15, 2005) (rejecting motion to strike a motion to dismiss); Nat'l Union Fire Ins. Co. v. Hicks, Muse, Tate & Furst, Inc., No. 02 Civ. 1334 (SAS), 2002 WL 1313293, at *7 (S.D.N.Y. June 14, 2002).

Plaintiffs had ample opportunity to present their arguments in their opposition to the Motion to Dismiss, but failed to do so. They need not be given a second bite at the apple, thus subjecting the Court and parties to unnecessary briefing. In all events, Plaintiffs' alternative request that the Court convert the motion to dismiss into one for summary judgment and grant them discovery should be denied. See MTS at 2 n.2 & 9. Even if the Court were to determine that it should not take judicial notice of any of the exhibits Plaintiffs have challenged, it can (and should) simply disregard them and consider the motion to dismiss based upon the papers remaining before it, as Plaintiffs own cases show.[3]

---

[3] See United States SEC v. Power, 525 F. Supp. 2d 415, 418 n.2 (S.D.N.Y. 2007) (noting the court simply did not consider certain submitted materials); In re Alstom S.A. Sec. Litig., 406 F. Supp. 2d 402, 409 (S.D.N.Y. 2005) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.") (internal quotation marks omitted).

## II.   All Of The Challenged Documents Are Cognizable On A Motion To Dismiss

As Plaintiffs themselves concede, it has long been "recognized that, when deciding a motion to dismiss" a court may consider matters "subject to judicial notice." MTS at 1. And though Plaintiffs use the permissive "may," the Supreme Court indeed prescribes that "courts must consider . . . sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007).

Under Federal Rule of Evidence 201(b), a court may take judicial notice of facts which are "(1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Each of the challenged exhibits fits comfortably into this framework.

### A.   The Court Need Not Ignore The Unprecedented Global Economic Crisis

Courts may take judicial notice of well-publicized economic phenomena. These include not just the recent housing and credit crisis, but similar widespread events like the collapse of the dot.com bubble and the junk bond market.[4] The fact that Defendants were navigating a major financial crisis is important in evaluating the strength of claims like the ones asserted here, i.e., that Defendants should have known of risks and future losses before the crisis emerged.

---

[4]   See, e.g., SEC v. Universal Express, Inc., 546 F. Supp. 2d 132, 137 n.7 (S.D.N.Y. 2008) ("The Court can take judicial notice of the widespread decline in property values over the past year.") (citing a newspaper article); In re Merrill Lynch & Co. Research Reports Sec. Litig., 289 F. Supp. 2d 416, 421 n.6 (S.D.N.Y. 2003) (taking judicial notice of "the internet bubble and its subsequent crash"); Virtual Countries, Inc. v. Republic of South Africa, 148 F. Supp. 2d 256, 267 (S.D.N.Y. 2001), aff'd, 300 F. 3d 230 (2d Cir. 2002) (taking judicial notice of the financial hardship experienced by "dot-coms" in 2000); First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 770 (2d Cir. 1994) (taking judicial notice of real estate market downturn in requiring plaintiff to allege loss causation with particularity), Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991) (junk bond market collapse).

Here, Plaintiffs challenge four exhibits – Exhibits B, C, E, and G – which they concede relate to the "state of the real estate and mortgage markets at the time of the Offerings," and a fifth (Exhibit H) about the October 2008 Dutch Government's investment in the Dutch financial sector, including ING (a subsequent market event dwelled upon in the hindsight-driven CAC). See MTS at 3-4. Like similar exhibits accepted by other courts (see n. 4 supra), these are inherently related to widely understood market conditions central to Plaintiffs' allegations:

- Exhibit B is a May 17, 2007 speech by Federal Reserve Chairman Ben Bernanke at the 43rd Annual Conference on Bank Structure and Competition discussing recent problems in the subprime mortgage market and his sentiment that it was likely that these problems would not significantly spill over to the rest of the economy or to the financial system.

- Exhibit C is a July 2, 2007 article published by Reuters announcing the sentiment of U.S. Treasury Secretary Henry Paulson that there was an expectation that declines in the subprime market sector would stop in the near future and that global economic growth remained solid.

- Exhibit E is a September 22, 2008 article published by Bloomberg.com announcing the unprecedented bankruptcy filing by Lehman Brothers Holding Inc., the acquisition of Merrill Lynch by Bank of America, the U.S. Government's take-over of American International Group, and the decline of the daily Dow Jones Industrial Average.

- Exhibit G is a listing from the U.S. Treasury Department of over 600 companies that were expected to receive funding through the government's Troubled Asset Relief Program ("TARP") in a government rescue effort following record declines in the economy in September 2008.

- Exhibit H is a press release issued on October 9, 2008 by the Dutch Ministry of Finance and De Nederlandsche Bank announcing its strategies aimed at protecting the Dutch financial sector and its major financial institutions in the wake of increasing extraordinary economic declines.

These Exhibits were not submitted – as Plaintiffs wrongly complain (see MTS at 2, 5) – for the truth of the matter asserted, but rather for the mere "fact of publication," which Plaintiffs concede is permissible. See MTS at 5 (citing In re Alstom S.A. Sec. Litig., 406 F. Supp. 2d 402 (S.D.N.Y. 2005) (considering extrinsic newspapers articles and press releases)). Their

4

publication serves as evidence of the general economic and widespread market sentiment at the time the information contained therein was released. See, e.g., In re Merrill Lynch & Co. Research Reports Sec. Litig., 273 F. Supp. 2d 351, 383-88 (S.D.N.Y. 2003) (speeches by SEC chairman and newspaper and journal articles showed widespread reporting of the problems at issue). The very fact that these views were being expressed and these events reported at a time when Plaintiffs contend Defendants should have known otherwise goes to the heart of the plausibility of Plaintiffs' claims. In short, such documents (and the underlying market trends and events they reference) confirm that Defendants acted in lockstep with the general understandings about the health and trends in the economy at the time, thereby undermining Plaintiffs' central (and unfounded) assertion that any Defendant acted without reasonable basis in evaluating the risks of and future losses on ING's RMBS. See, e.g., Condit v. Dunne, 317 F. Supp. 2d 344, 357-78 (S.D.N.Y. 2004) (taking judicial notice of "the widespread publicity and speculation" as evidenced by additional news articles submitted by defendant "to place [his] comments in the broader social context") (internal quotation marks omitted); cf. L.C. Capital Partners v. Frontier Ins. Group, 318 F.3d 148, 155 (2d Cir. 2003) (noticing press reports and court ruling on the subject of whether plaintiffs were on inquiry notice of core claim for statute of limitations purposes).

Notably, Plaintiffs do not – because they could not – dispute the existence of an unfolding credit crisis, nor that market observers set forth these views; they are facts widely known. Where, as here, generally known information renders an allegation implausible, it must be dismissed. Iqbal, 129 S. Ct. at 1949-50.[5]

---

[5] Similarly, where an allegation is contradicted by a cognizable document, the court need not accept the allegation as true. See, e.g., Williams v. Citibank, 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008). As more fully set forth in the Motion to Dismiss, Plaintiffs continually mischaracterize the Dutch Government's commitment of funds to ING, now going so far as to dispute that its stated purpose was to "preserve a level playing field" in light of the

### B. The Court May Consider Material Explaining The ABX And TABX Indices

Plaintiffs next challenge Defendants' submission of material from the ABX and TABX Indices' own website (Exhibit Z). They do so in a footnote without any case support. MTS at 4 n.5. Defendants included Exhibit Z to put into context Plaintiffs' allegations that the indices were designed to "track" or "replicate the market value of" "senior RMBS" and that "these public indices . . . demonstrated the impairment of ING Alt-A and subprime RMBS . . . no later than March 31, 2008." CAC ¶¶ 88, 183. The website explains the real structure of these indices, namely that they track prices for a small handful of credit default swaps and that the TABX index does so only with respect to BBB and BBB- rated asset-backed securities (in Plaintiffs' words, "the junior tranche RMBSs," CAC ¶ 90). DB at 19; Exhibit Z. Given that the source material here is the website of the owner and administrator of the indices themselves, these definitions are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," and thus a fact "not subject to reasonable dispute." Fed. R. Evid. 201(b).

Even the cases Plaintiffs cite recognize that it is proper for a court to look to dictionaries, treatises, and other readily available material to educate itself about matters before it.[6] And without reference to the explanatory website, Plaintiffs' conclusory allegations about the link between the indices and ING's RMBS still fail as even they concede that the indices relate to credit default swaps on wholly different RMBS than those owned by ING. See, e.g., CAC ¶¶ 90-

---

national support given to other major financial institutions. MTS at 4, 6 n.7; but see Exhibit H at 1 (using that exact quote); DB at 43.

[6] See, e.g., In re Scottish Re Group Sec. Litig., 524 F. Supp. 2d 370, 376 & n.22 (S.D.N.Y. 2007) (looking to IMF's "Coordinated Portfolio Investment Survey Guide" to inform itself about the income-related effects of the securitization of assets); see also Shapiro v. UJB Financial Corp., 964 F.2d 272, 281 (3d Cir. 1992) (surveying banking and accounting literature on loan loss reserves); Nix v. Hedden, 149 U.S. 304, 307, 13 S. Ct. 881, 882 (1893) ("[D]ictionaries are admitted, not as evidence, but only as aids to the memory and understanding of the court.").

91, 183. Finally, regardless of whether ING considered the indices as one of many inputs into their valuation process, the concept that those indices are not a direct proxy for the value of ING's RMBS and could not of themselves be "objective evidence . . . that ING had incurred hundreds of millions of euros of impairment losses" is common sense. CAC ¶ 186; see DB at 19, 48.

### C. The Court Should Consider Exhibit II In Assessing The "Total Mix" Of Information Available To Plaintiffs

Perhaps Plaintiffs' most surprising challenge is to Defendants' Exhibit II – an ING presentation to analysts for the first quarter of 2008, which was available to the public on ING's website. In that presentation, ING provided detailed information about the mortgages underlying its RMBS, including about loan type, vintage, geographic concentration, and delinquencies, i.e., the very details Plaintiffs allege were hidden from investors. See DB at 41-42; MTS at 6.

It is a bedrock principle of the securities laws that the "materiality" of an alleged omission depends on whether "the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." Basic Inc. v. Levinson, 485 U.S. 224, 231-32, 108 S. Ct. 978, 983 (1988) (citations omitted). As the plain meaning of that standard implies, "the total mix of information may include information already in the public domain and facts known or reasonably available to shareholders." Garber v. Legg Mason, No. 08 Civ. 1831, 2009 WL 3109914, at *2 (2d Cir. Sept. 30, 2009) (dismissing claim where alleged omission was reported in news articles and SEC filings). On motions to dismiss, courts thus routinely consider extrinsic materials like Exhibit II in assessing "total mix" – again, not for the truth of the matter asserted[7] – but rather to assess

---

[7] Because Plaintiffs misconstrue the purpose for which the exhibits were submitted, they continually cite cases which, as Plaintiffs themselves describe them, address a set of facts in which the parties sought to submit documents for the truth of the matter asserted. See, e.g., MTS at 2 (citing In re Omnicom Group, Inc. Sec. Litig.,

7

whether the information claimed to have been omitted was publicly available. Id. at *3; City of Livonia Employees' Retirement Sys. v. Essner, No. 07 Civ. 10329 (RJS), 2009 WL 1809984, at *4 (S.D.N.Y. June 25, 2009) (denying a motion to strike an argument based on an analyst presentation; the exhibit showed allegedly omitted facts had been disclosed to the market).[8]

While this is enough, there is more: this presentation to analysts was the source of allegations in the CAC. Because the CAC admits of no investigation based upon confidential witnesses or internal documents, consistent with Rule 11 Plaintiffs could only make granular allegations about ING's RMBS holdings through ING's own public disclosures. As the following chart shows, Plaintiffs' allegations are lifted directly from this analyst presentation.

*Plaintiff's Allegations in CAC ¶ 182 Concerning the June 2008 Offering*

| Allegation | Source |
|---|---|
| During the first quarter of 2008, more than **20%** of ING's U.S. RMBS portfolio was downgraded to AA. | 1Q 2008 Analyst Presentation[9] at 46: **20.7%** of ING's subprime U.S. RMBS was downgraded to AA (€475 million divided by €2.3 billion). |
| During the first quarter of 2008, the sum of the more than 60+ day delinquent, bankrupt, foreclosed and REOs mortgage loans underlying ING Direct's Alt-A RMBS portfolio increased by more than **46%**. | 1Q 2008 Analyst Presentation at 49: "Delinquencies" (defined on p. 47) of mortgages underlying ING Direct's Alt-A RMBS portfolio increased from 3.9% to 5.7%, which represents a **46.2%** increase. |

---

No. 02 Civ. 4483 (RCC), 2005 WL 735937, at *13 (S.D.N.Y. Mar. 30, 2005)); MTS at 7 (citing Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006)); MTS at 8 (citing Official Comm. Of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 158 (2d Cir. 2003)). Likewise, their case support for converting the Motion to Dismiss into one for summary judgment involved the same circumstance. See MTS at 8 (citing Watts v. Jackson Hewitt Tax Serv., 579 F. Supp. 2d 334, 344 (E.D.N.Y. 2008)).

[8]   See also Ganino v. Citizens Utils. Co., 228 F.3d 154, 167 (2d Cir. 2000) (holding, on a motion to dismiss, that a misstatement or omission is not material if the undisclosed fact is already in the public domain); In re Bristol Myers Squibb Co. Sec. Litig., 586 F. Supp. 2d 148, 161 n.7 (S.D.N.Y. 2008) (noting, on a motion to dismiss, that analyst reports "show whether and when information was provided to the market such that the reports contributed to the total mix of information") (internal quotation marks omitted); Keeney v. Larkin, 306 F. Supp. 2d 522, 533 (D. Md. 2003) (holding, on a motion to dismiss, analyst reports part of the total mix); In re Yukos Oil Co. Sec. Litig., 04 Civ. 5243 (WHP), 2006 WL 3026024, at *21 (S.D.N.Y. Oct. 25, 2006) (considering, on a motion to dismiss, newspaper articles as part of the total mix).

[9]   Exhibit II contains excerpts from this presentation (pp. 48-52); the full text appears on ING's website, see n.14, infra, and at Exhibit A to the accompanying January 4, 2010 Declaration of Anna P. Gercas ("Gercas Decl.").

| Allegation | Source |
|---|---|
| During the first quarter of 2008, the sum of the more than 60+ day delinquent, bankrupt, foreclosed and REOs mortgage loans underlying ING Insurance America's subprime RMBS portfolio increased by more than **27%**. | 1Q 2008 Analyst Presentation at 47: "Delinquencies" of mortgages underlying ING Insurance America's subprime RMBS portfolio increased from 13.6% to 17.3%, which represents a **27.2%** increase. |
| On March 31, 2008, approximately **48%** and **39%** of the notional value of ING Direct's U.S. Alt-A RMBS portfolio were 2005-2006 and 2007 vintages ("i.e., the year that the underlying sub-prime collateral was issued"),[10] respectively. | 1Q 2008 Analyst Presentation at 48: Notional value of 2005 and 2006 vintages in ING Direct's Alt-A RMBS portfolio was €11.111 billion (€6.195 billion plus €4.916 billion). €11.111 billion divided by €23.065 billion total notional value of portfolio equals **48%**. Notional value of 2007 vintage was €9.005 billion. €9.005 billion divided by €23.065 billion notional value equals **39%**. |
| During the first quarter of 2008, the market value of ING Direct's 2005-2006 vintage Alt-A U.S. RMBS declined from approximately **97%** to **86%** of notional value, and 2007 vintage Alt-A RMBS declined from approximately **96%** to **78%** of notional value. | 4Q 2007 Analyst Presentation[11] at 56: Market value of 2005 and 2006 vintages in ING Direct's Alt-A RMBS portfolio at 2007 year-end was €11.663 billion (€6.693 billion plus €4.970 billion). Notional value was €12.025 billion (€6.890 billion plus €5.135 billion). €11.663 billion market value divided by €12.025 billion notional value equals **97%**. Market value of 2007 vintage was €8.636 billion; notional value €8.991 billion. €8.636 billion market value divided by €8.991 billion notional value equals **96%**.<br><br>1Q 2008 Analyst Presentation at 48: Market value of 2005 and 2006 vintages in ING Direct's Alt-A RMBS portfolio at March 31, 2008 was €9.592 billion (€5.368 billion plus €4.224 billion). Notional value was €11.111 billion (€6.195 billion plus €4.916 billion). €9.592 billion market value divided by €11.111 billion notional value equals **86%**. Market value of 2007 vintage was €7.077 billion; notional value €9.005 billion. €7.077 billion market value divided by €9.005 billion notional value equals **78.6%**. |

---

[10] Plaintiffs err when they refer to the collateral underlying ING Direct's Alt-A RMBS portfolio as "subprime," because Alt-A mortgages – while non-prime – are not "subprime."

[11] The full text of this presentation appears on ING's website, see n.14, infra, and at Exhibit C to the Gercas Decl.

9

| **Allegation** | **Source** |
|---|---|
| During the first quarter of 2008, the market value of ING Direct's negative amortization RMBS declined from **94%** to **65%** of notional value. | 1Q 2008 Analyst Presentation at 50: "The fair value of ING Direct's NegAm RMBS declined from **93.7%** at year-end 2007 to **64.7%** at 31 March 2008." |
| At March 31, 2008, ING held approximately **€4.8 billion** negative amortization loans. | 1Q 2008 Analyst Presentation at 50: ING Direct's negative amortization Alt-A RMBS totaled **€4.8 billion** (€1.3 billion plus €1.6 billion plus €1.8 billion plus €0.1 billion). |

On the one hand, it is thus clear that ING's publicly disclosed presentation is appropriately considered on a motion to dismiss because it was plainly relied upon in drafting the CAC.[12] On the other hand, the fact that ING made these disclosures before the June 2008 Offering demonstrates – the CAC's allegations to the contrary notwithstanding – that the very information the CAC asserts was omitted <u>was</u> part of the total mix of information available to investors.

The fact that the June 2008 Prospectus contained a boilerplate disclaimer does not alter this longstanding doctrine. See MTS at 7 (noting that the prospectus stated, "You should rely only on the information contained or incorporated by reference in this prospectus supplement and the accompanying prospectus."). Indeed, the District Court in In re WorldCom, Inc., Sec. Litig., 346 F. Supp. 2d 628 (S.D.N.Y. 2004), explicitly considered the materiality of certain alleged omissions from a registration statement that contained language almost verbatim to the language here. Id. at 645-46. Judge Cote held nonetheless that the underwriter-defendant could "be relieved of a duty to disclose when certain developments affecting a corporation become

---

[12] See, e.g., ATSI Commc'ns Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (court "may consider [inter alia] . . . statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2000) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal quotation marks omitted).

matters of public knowledge." Id. at 687-88 (quoting Seibert v. Sperry Rand Corp., 586 F.2d 949, 952 (2d Cir. 1978) (total mix case in proxy context)).

As WorldCom understood, the registration statement disclaimer is not an instruction to ignore information typically considered by investors. Rather it is commonplace cautionary language recommended by the SEC to make clear that the issuer is not responsible for all statements in the marketplace. See SEC, A Plain English Handbook: How to create clear SEC disclosure documents, at 18 (1998), http://www.sec.gov/pdf/handbook.pdf (last visited Dec. 26, 2009) (providing as a suggestion: "You should rely only on the information contained in this document or that we have referred you to."). It thus provides issuers with control over who has authority to speak for the company. See Tracinda Corp. v. DaimlerChrysler AG, 364 F. Supp. 2d 362, 401 n.11 (D. Del. 2005) (oral representations made by Chrysler official to large shareholder not actionable because, among other things, the proxy contained similar "rely only" language). It cannot be said that a reasonable investor would fail to understand a Company's own website to be an authorized source.[13]

Nor could the authenticity of ING's website (whose address is printed on the Offering Materials) reasonably be in dispute. See, e.g., Doron Precision Sys., Inc. v. FAAC, Inc., 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'") (citing Fed. R. Evid. 201(b)); see also Hotel Employees & Rest. Employees Union, Local 100 v.

---

[13] Contrary to Plaintiffs' overstated paraphrasing, Defendants did not "admit" that "the Offering Materials explicitly told investors not to rely [sic] any material on ING's website." See MTS at 7 (emphasis added). Rather, in connection with noting that the June 2008 Offering Materials posted ING's website, Defendants also noted that the Offering Materials stated that "[t]he contents of our website are not incorporated into, and do not form part of, this prospectus supplement." DB at 41. But that is irrelevant to Defendants' argument that the website is nonetheless part of the total mix.

11

City of N.Y. Dep't of Parks & Rec., 311 F.3d 534, 549 (2d Cir. 2002) (same); Doron, 423 F. Supp. 2d at 178 (noting that such materials contradicted the allegations in plaintiff's complaint).[14] Plaintiffs here do not challenge the website's authenticity but note that Defendants have failed to produce a declaration by an ING representative attesting to the authenticity of the analyst presentations – something the Defendants could readily provide should the Court so require.[15]

Finally, Plaintiffs' last resort – to In re Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 276, n.10 (3d Cir. 2004) – provides no refuge. They cite that case for its holding that an omission was "actionable under [Section] 11 even where the information was disclosed in a pre-IPO press release." MTS at 8. This simply goes to the merits of Defendants' argument, not to whether the document is subject to notice. See, e.g., City of Livonia, 2009 WL 1809984, at *4 (challenge to the merits of an argument not an appropriate basis for granting motion to strike). In any event, Adams Golf is readily distinguishable: There, the court found that prior to the IPO, there was no indication that the press release would be publicized or digested by an efficient market. Here, the information was disseminated by a public company to analysts, and hence the market, and made available to the public.

---

[14] For this reason alone, the Court can take judicial notice of Exhibit I, a second analyst presentation available on ING's website. Further, Plaintiffs challenge Defendants' reliance on Exhibit I as an additional source regarding the fact that the Dutch government's stated purpose for its "bailout" was to "level the playing field." See MTS at 6 n.7. For the reasons set forth at Point II.A and note 5, supra, the Court may take judicial notice of the Dutch government's own statement as to that issue.

[15] Plaintiffs further challenge the fact that the presentations were not submitted to the Court in their complete form  They are available – in their complete form – on ING's website. See Investor Relations section of http://www.ing.com, or http://www.ing.com/group/showdoc.jsp?docid=039176_EN&menopt=ivr|qtr|qtr|arc (last visited Dec. 28, 2009). In any event, while Defendants provided excerpts so as not to overburden the Court with excessive materials, as noted previously, the full presentations are attached as Exhibits A and B to the Gercas Decl. These alleged "defects" are in stark contrast to the authenticity dispute in Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (cited in MTS at 6 n.6), in which the District Court relied on private offering materials that plaintiffs disputed receiving in advance of investing.

As Plaintiffs themselves describe it, "the issues for which Exhibit II has been offered are at the heart of plaintiffs' falsity and materiality allegations." But clearly that is not reason enough to strike it and yet Plaintiffs offer nothing more. Plaintiffs' appeal to wearing blinders is telling, if not a concession, as to the strength of their claims.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Strike Defendants' Exhibits B, C, E, G, H, I, Z, and II should be denied in its entirety.

Dated: New York, New York
December 31, 2009

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____
Mitchell A. Lowenthal
Giovanni P. Prezioso

One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

Attorneys for Defendant ING Groep N.V., ING Financial Holdings Corp., and ING Financial Markets LLC

SHEARMAN & STERLING LLP

By: _____
Stuart J. Baskin
Adam S. Hakki
Herbert S. Washer

599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

Attorneys for all Underwriter Defendants except ING Financial Markets LLC

13