UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X
                              :

| | |
|---|---|
| MARSHALL FREIDUS and EDWARD P. ZEMPRELLI, Individually and on Behalf of All Others Similarly Situated, | 09 Civ. 1049 (LAK) and consolidated cases |
| Plaintiffs, | 09 Civ. 1284 (LAK) 09 Civ. 1410 (LAK) |
| - against - | 09 Civ. 1820 (LAK) 09 Civ. 2667 (LAK) 09 Civ. 3066 (LAK) |
| ING GROEP N.V., et al., | |
| Defendants. | |

------------------------------------------------------------------------ X

## DEFENDANTS' SUBMISSION IN RESPONSE TO THE COURT'S JULY 18, 2012 ORDER AND OPPOSITION TO JOSEPH SILLIMAN'S REQUEST TO BE APPOINTED LEAD PLAINTIFF

Mitchell A. Lowenthal, Esq.
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York  10006
Tel:  (212) 225-2000
Fax:  (212) 225-3999

Adam S. Hakki, Esq.
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York  10022
Tel:  (212) 848-4000
Fax:  (212) 848-7179

Attorneys for ING Groep, N.V., ING Financial
Holdings Corporation, Stichting ING
Aandelen, ING Financial Markets LLC,
Michel J. Tilmant, Cees Maas, J. Hans van
Barneveld, Eric F. Boyer de la Giroday, Eli P.
Leenaars, Alexander H.G. Rinnooy Kan, Hans
K. Verkoren, A.H.J. Risseeuw, Huib J. Blaisse,
Paul M.L. Frentrop, Tom Regtuijt, and Jan J.
M. Veraart.

Attorneys for UBS Securities LLC, Citigroup
Global Markets Inc., Merrill Lynch, Pierce,
Fenner & Smith Incorporated, Wachovia
Capital Markets, LLC, Morgan Stanley & Co.
LLC, Banc of America Securities LLC, RBC
Capital Markets Corporation, J.P. Morgan
Securities Inc., Credit Suisse Securities (USA)
LLC, and HSBC Securities (USA) Inc.

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................. 2

        A.      Initial Lead Plaintiff Process and Rule 12(b)(6) Proceedings ........... 2

        B.      Class Certification and Belmont's Lack of Standing ......................... 2

        C.      The Court's July 18, 2012 Order and Mr. Silliman's Response ........ 3

ARGUMENT ....................................................................................................................... 4

    I.      The Appropriate Procedure Following the Denial of Class Certification ...... 4

        A.      Belmont and Lead Counsel ................................................................. 4

        B.      The Substitute Lead Plaintiff Process ................................................ 5

        C.      Procedure After Appointment of Substitute Lead Plaintiff .............. 6

    II.     Mr. Silliman's Motion To Be Appointed Lead Plaintiff Should
           Be Denied ..................................................................................................... 8

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Albano v. Shea Homes Ltd. P'ship,
254 P.3d 360 (Ariz. 2011)..................................................................................... 9

Cacha v. Montaco, Inc.,
554 S.E.2d 388 (N.C. Ct. App. 2001) .................................................................. 9

Caviness v. Derand Res. Corp.,
983 F.2d 1295 (4th Cir. 1993) ............................................................................. 8

Endress v. Gentiva Health Services, Inc.,
278 F.R.D. 78 (E.D.N.Y. 2011)............................................................................ 4, 6

Farber v. Lok-N-Logs, Inc.,
701 N.W.2d 368 (Neb. 2005)................................................................................ 9

Footbridge Ltd. Trust v. Countrywide Fin. Corp.,
770 F. Supp. 2d 618 (S.D.N.Y. 2011)................................................................... 9

Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.,
No. 09 Civ. 3701 (JPO), 2012 WL 1788142 (S.D.N.Y. May 15, 2012) ............. 4, 5, 8

Freidus v. ING Groep N.V.,
736 F. Supp. 2d 816 (S.D.N.Y. 2010)................................................................... 2

Henderson v. Parks Homes, Inc.,
555 S.E.2d 926 (N.C. Ct. App. 2001) .................................................................. 9

In re Britannia Bulk Holdings, Inc. Sec. Litig.,
No. 08 Civ. 9554 (DLC), 2010 WL 446529 (S.D.N.Y. Feb. 9, 2010) ................ 6

In re Herley Inds., Inc.,
No. 06-2596, 2010 WL 176869 (E.D. Pa. Jan. 15, 2012)..................................... 4

In re IndyMac Mortg.-Backed Sec. Litig.,
793 F. Supp. 2d 637 (S.D.N.Y. 2011)................................................................... 8

In re IPO Sec. Litig.,
214 F.R.D. 117 (S.D.N.Y. 2002) ......................................................................... 5, 6

In re Lehman Bros. Sec. & ERISA Litig.,
799 F. Supp. 2d 258 (S.D.N.Y. 2011)................................................................... 8

In re Lehman Bros. Sec. & ERISA Litig.,
800 F. Supp. 2d 477 (S.D.N.Y. 2011)................................................................... 8

.

*In re Neopharm, Inc. Sec. Litig.,*
No. 02 C 2976, 2004 WL 742084 (N.D. Ill. Apr. 7, 2004)................................. 5, 6

*In re NYSE Specialists Sec. Litig.,*
240 F.R.D. 128 (S.D.N.Y. 2007) ....................................................................... 4

*In re Xerox Sec. Litig.,*
No. 3:99CV2374 (AWT), 2006 WL 1359339 (D. Conn. May 12, 2006) ......................... 4

*Jones v. Saxon Mortg., Inc.,*
537 F.3d 320 (4th Cir. 1998) ........................................................................... 8

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,*
501 U.S. 350 (1991).......................................................................................... 8

*Langley v. Pierce,*
438 S.E.2d 242 (S.C. 1993) ............................................................................. 9

*McCann v. Hy-Vee, Inc.,*
663 F.3d 926 (7th Cir. 2011) ........................................................................... 8

*Methodist Healthcare Sys. of San Antonio, Ltd. v. Rankin,*
307 S.W.3d 283 (Tex. 2010)............................................................................. 9

*Munoz v. Ashcroft,*
339 F.3d 950 (9th Cir. 2003) ........................................................................... 8

*P. Stolz Family P'ship L.P. v. Daum,*
355 F.3d 92 (2d Cir. 2004)................................................................................ 8

*Plumbers, Pipefitters, & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings, Ltd.,*
No. 11 Civ. 5097 (JFK), 2012 WL 3283481 (S.D.N.Y. Aug. 13, 2012)............................ 9

*Radford v. Gen. Dynamics Corp.,*
151 F.3d 396 (5th Cir. 1998) ;........................................................................... 8

*Rudenauer v. Zafiropoulos,*
837 N.E.2d 278 (Mass. 2005) ........................................................................... 9

*Short v. Belleville Shoe Mfg. Co.,*
908 F.2d 1385 (7th Cir. 1990) ........................................................................... 9

*Snyder v. Love,*
153 P.3d 571 (Mont. 2006)................................................................................ 9

*Transaero, Inc. v. La Fuerza Area Boliviana,*
99 F.3d 538 (2d Cir. 1996)................................................................................ 6

**Rules and Statutes**

15 U.S.C. § 77m.................................................................................................................   8

Defendants submit this memorandum in response to the Court's July 18, 2012 Order (the "July Order"), and in opposition to the request by proposed intervener Joseph Silliman to be appointed lead plaintiff.

## PRELIMINARY STATEMENT

In the July Order, the Court sought guidance from the parties on the appropriate procedure to follow in light of (1) its July 10, 2012 Memorandum and Order (Dkt. No. 173) in which the Court denied the motion for class certification made by Lead Plaintiff Belmont Holdings Corporation ("Belmont") because discovery showed that Belmont had suffered no damage (it had sold all of the relevant securities for full value and received all payments of interest that were due), and (2) the request two days later by Mr. Silliman to be appointed to replace Belmont as lead plaintiff. Dkt. No. 174. Mr. Silliman's Submission in Response to the July 18 Order ("Silliman Br."), however, does double duty: it comments on the procedure for going forward, and includes a motion that the Court appoint him to replace Belmont as lead plaintiff and that counsel of his choice be appointed lead counsel.

Mr. Silliman cannot serve as lead plaintiff (or even pursue an individual action) because his claims are time-barred: the securities offering he challenges took place in June 2008, so the three year statute of repose applicable to his Securities Act claims (and they are the only claims alleged in the complaint) ran more than a year ago. Nor can any other purchaser of the securities issued in that offering bring a timely claim, because none (except Belmont) is a party to this action, and the repose period is absolute. While Belmont's claim was timely, Belmont may no longer pursue this case, as a representative of absent parties or otherwise, as it suffered no compensable injury in connection with its purchase of the securities. Dkt. No. 173 at 4-5. Mr. Silliman does not contend otherwise and, tellingly, his co-counsel is also counsel to Belmont.

Accordingly, defendants respectfully submit that the appropriate procedure going forward is that the action should be dismissed.

## BACKGROUND

A.    Initial Lead Plaintiff Process and Rule 12(b)(6) Proceedings

This action asserts Securities Act claims based on three offerings of Perpetual Capital Hybrid Securities issued by ING Groep N.V., ("ING") in, respectively, June and September 2007 and June 2008.  On May 19, 2009, Judge Preska appointed Marshall Freidus, who alleged that he had purchased securities issued in the two 2007 offerings, and Belmont, which alleged that it had purchased securities in the June 2008 offering (the "June 2008 Securities"), as Lead Plaintiffs. Dkt. No. 32.  Judge Preska also appointed Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and the Law Offices of Bernard M. Gross, P.C. (the "Gross Firm") as counsel to the Lead Plaintiffs.  Id.  The Lead Plaintiffs then sought Judge Preska's recusal, and the action was assigned to this Court.

The Lead Plaintiffs thereafter filed the Consolidated Amended Complaint (the "CAC"). In response to the defendants' Rule 12(b)(6) motion, this Court dismissed all claims with respect to the two 2007 offerings and many allegations with respect to the June 2008 offering; while some allegations with respect to the June 2008 offering survived Rule 12(b)(6) dismissal, the Court pointedly noted their survival was a "close call."  Freidus v. ING Groep N.V., 736 F. Supp. 2d 816, 841 (S.D.N.Y. 2010).

B.    Class Certification and Belmont's Lack of Standing

As the sole plaintiff who allegedly purchased securities issued in the June 2008 offering, Belmont alone moved to certify a class and to be appointed class representative.  Dkt. No. 141. Class certification discovery revealed that – before the CAC had been filed – Belmont had sold

the June 2008 Securities, for par, and had received all interest payments it was due. As a result, the Court denied its motion for class certification, noting that Belmont had not "suffered any damages in relation to its claims in this case" because "it has received the full value of what it paid for [the June 2008 Securities]," and accordingly that it would not be "an adequate representative of the proposed class." Dkt. No. 173 at 4-5.

Belmont's lack of standing to pursue claims arising from the June 2008 offering was disclosed to the public, including Mr. Silliman (and his counsel, which is also Belmont's counsel), in March 2011 (many months before the three year repose period ran). Specifically, on March 4, 2011, defendants filed a Rule 12(c) motion in which they explained that Belmont's President and General Counsel had admitted that Belmont had not suffered any realized or unrealized loss in connection with its ING investment and thus could not act for the proposed class. Dkt. No. 150 at 2.[1] On March 25, 2011, defendants filed their opposition to Belmont's class certification motion in which defendants again pointed out that Belmont had sold all of the June 2008 Securities it owned without suffering any cognizable damage. Dkt. Nos. 161-64. No timely motion to intervene or replace Belmont, however, was ever made.

C.    The Court's July 18, 2012 Order and Mr. Silliman's Response

Two days after the Court's denial of Belmont's motion for class certification, Mr. Silliman wrote to the Court, seeking to replace Belmont as lead plaintiff for the surviving allegations relating to the June 2008 offering. In response, the Court issued the July Order, observing that "[n]either Mr. Silliman nor Mr. Carlisle [another potential intervener previously identified by Belmont's counsel in the reply papers submitted in support of Belmont's class

---

[1]    The Rule 12(c) motion principally argued that all surviving allegations with respect to the June 2008 offering were meritless because each purported "omission" had been disclosed before the offering by ING in presentations to analysts that were (and continue to be) posted on ING's website. The Court denied the Rule 12(c) motion without prejudice. Dkt. No. 167.

3

certification motion] is a plaintiff in this case" and invited Messrs. Silliman and Carlisle and defendants to "brief the appropriate procedure in these circumstances, particularly given the PSLRA." Dkt. No. 174.

Mr. Carlisle filed no response to the Court's July Order. Mr. Silliman responded by affirmatively seeking to be appointed the lead plaintiff on the surviving June 2008 offering claims. Dkt. No. 175. In addition, he sought the appointment of Girard Gibbs LLP and Robbins Geller (Belmont's counsel) as his counsel. Silliman Br. 6-7. There is no mention in Mr. Silliman's submission about Belmont's status or the Gross Firm, or any effort to explain how his claims are timely.[2]

## ARGUMENT

I.    **The Appropriate Procedure Following the Denial of Class Certification**

A.    Belmont and Lead Counsel

Because Mr. Silliman's claims are untimely, precluding him from being able to serve as lead plaintiff, it is not necessary for the Court to determine what the proper procedure would be for appointing a substitute lead plaintiff for Belmont. But the July Order specifically sought guidance with respect to that question, so the defense will address it.

As a threshold matter, it is "part of a lead plaintiff's responsibility to propose their own withdrawal and substitution should it be discovered that they may no longer adequately represent the interests of the purported plaintiff class." In re NYSE Specialists Sec. Litig., 240 F.R.D. 128, 134 (S.D.N.Y. 2007).[3] Belmont has not filed any formal withdrawal. Nor, however, has it filed

---

[2]    According to Mr. Silliman's submission, Mr. Carlisle did not file his own brief because he supports Mr. Silliman's submission and Mr. Silliman's request to be appointed lead plaintiff. Silliman Br. 2 n.1.

[3]    See also Endress v. Gentiva Health Servs., Inc., 278 F.R.D. 78, 81 (E.D.N.Y. 2011) (granting named plaintiff's motion to withdraw); Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co., No. 09 Civ. 3701 (JPO), 2012 WL 1788142, at *1 (S.D.N.Y. May 15, 2012) (granting lead plaintiff's motion to withdraw); In re Herley Inds., Inc., No. 06-2596, 2010 WL 176869, at *1 (E.D. Pa. Jan. 15, 2012) (lead plaintiff agreeing to withdraw); In re

an appeal from the Court's denial of its motion for class certification, and the time for doing so under Rule 23(f) has expired. Presumably, Belmont has given consent to Robbins Geller to permit the firm to represent Mr. Silliman in his effort to replace Belmont. It appears safe to assume, therefore, that Belmont has withdrawn from these proceedings and is not, and will not, further pursue claims based upon the June 2008 offering. If that were not the case, then it would be anomalous at best to proceed with any other lead plaintiff while Belmont intended to seek appellate relief at some point from the Court's denial of its motion for class certification.

B.   The Substitute Lead Plaintiff Process

As several courts in this district have recognized, the PSLRA sets forth clear procedures for the initial appointment of a lead plaintiff, but the statute is silent as to the procedure for substituting a new lead plaintiff if the first appointed one withdraws or is found inadequate to serve as the class representative under Rule 23.[4] Varied approaches have been adopted, but the touchstone has been to further the PSLRA's goal of promoting investor-driven, not lawyer-driven, litigation. As a result, courts have generally followed these principles: (1) the only appropriate substitute lead plaintiff is one who originally filed a complaint or moved to be appointed lead plaintiff during the 60-day notice period triggered by the original publication (so the publication of a renewed notice is thus not required);[5] (2) the former lead plaintiff's counsel

---

Xerox Sec. Litig., No. 3:99CV2374 (AWT), 2006 WL 1359339, at * 1 (D. Conn. May 12, 2006) (discussing that all of prior lead plaintiffs withdrew).

[4]   See, e.g., Fort Worth Emps. Ret. Fund, 2012 WL1788142, at *1; In re IPO Sec. Litig., 214 F.R.D. 117, 120 (S.D.N.Y. 2002).

[5]   See, e.g., In re IPO, 214 F.R.D. at 120; Fort Worth Emps' Ret. Fund, 2012 WL 1788142, at *5; In re Neopharm, Inc. Sec. Litig., No. 02 C 2976, 2004 WL 742084, at *3 (N.D. Ill. Apr. 7, 2004); Order on Pending Motions, In re HealthSouth Sec. Litig., CV-03-BE-1500-S (N.D. Ala. Dec. 1, 2004) [Dkt. No. 287]. When no potential lead plaintiff meets those requirements, courts have deemed movants timely who moved to be appointed lead plaintiff within some amount of time from the withdrawal of the previous lead plaintiff. See, e.g., In re IPO, 214 F.R.D. at 120.

may not simply pick a replacement;[6] and (3) all potential lead plaintiffs must otherwise satisfy

the requirements of the PSLRA, including fulfilling the typicality and adequacy requirements.[7]

This ensures that previously rejected or withdrawn lead plaintiff candidates – who have

demonstrated an interest in and willingness to control the litigation – are incented to remain

engaged with the developments in the case and be able to step in if the appointed lead plaintiff

withdraws or falters. See Endress v. Gentiva Health Services, Inc., 278 F.R.D. 78, 84 (E.D.N.Y.

2011) ("Any interested putative class members will have followed the course of the case and will

now be on notice of a new procedure for appointment of lead plaintiff as set forth above."). To

that end, Mr. Silliman stated in the April 2009 withdrawal of his lead plaintiff application that,

"[s]hould the Court determine that the Belmont Group [is] incapable or inadequate to represent

the Class, . . . [he] remains able and willing to serve as Lead Plaintiff." Dkt. No. 27.  Mr.

Silliman made reference to that comment in his July 12 letter to the Court, when he signaled an

intent to move for relief from the initial lead plaintiff appointment order under Rule 60(b)(6).[8]

> C.    Procedure After Appointment of Substitute Lead Plaintiff

Were a qualified lead plaintiff applicant to emerge, defendants respectfully suggest that

the process going forward should be the following:

---

[6]     See In re IPO, 214 F.R.D. at 120 (stating that, when the lead plaintiff withdraws, the appropriate lead plaintiff is the "next 'most adequate'" plaintiff); In re Neopharm, Inc. Sec. Litig., 2004 WL 742084, at *3 ("Merely accepting counsel's suggestion with input from no other potential lead plaintiff is contrary to the PSLRA."); Order on Pending Motions, In re HealthSouth Sec. Litig., Case No. CV-03-BE-1500-S (N.D. Ala. Dec. 1, 2004) [Dkt. No. 287] (rejecting lead plaintiff's motion to unilaterally appoint its desired lead plaintiff).

[7]     See In re IPO, 214 F.R.D. at 121.

[8]     He has not, however, made any such motion; nor would he be entitled to do so. "By its own terms, Rule 60(b) applies only to judgments [and orders] that are final." Transaero, Inc. v. La Fuerza Area Boliviana, 99 F.3d 538, 541 (2d Cir. 1996). Moreover, as the Court's July Order noted, Mr. Silliman is not a party to this case. As a result, he may not pursue Rule 60(b)(6) relief. See, e.g., In re Britannia Bulk Holdings, Inc. Sec. Litig., No. 08 Civ. 9554 (DLC), 2010 WL 446529 (S.D.N.Y. Feb. 9, 2010) (Cote, J.) (denying shareholder's Rule 60(b) motion to vacate lead plaintiff order so that he could pursue claims that appointed lead plaintiff declined to assert).

First, to avoid undue prejudice to the defendants and conserve judicial resources, any new lead plaintiff should have to step into the case where Belmont left it. Thus, the operative complaint should be the CAC, as shaped by the Court's prior rulings. The happenstance of Belmont's lack of standing should not become a license to turn back the clock and revisit settled matters, particularly since Belmont's lack of standing in no way suggests that it had somehow pulled its punches. While, as argued below, Mr. Silliman cannot become the lead plaintiff, were he *arguendo* able to be, requiring him to adhere to the prior shaping of the case by this Court is particularly apt given his request that Robbins Geller be appointed his counsel, and the justification he offers for doing so: "to ensure continuity with minimal delay and duplication of effort." Silliman Br. 7.

Second, any new lead plaintiff would have to submit to class certification discovery, and in connection with any renewed motion for class certification any issues unique to that lead plaintiff would need to be briefed. On the other hand, there is no need, or reason, for the parties to make additional class certification arguments (pro and con) because those issues were fully briefed previously. Dkt. Nos. 140-43, 161-64, 171-72, Defendants' May 10, 2011 Letter to the Court. In that regard, as the Court may recall, defendants opposed Belmont's class certification motion on several grounds that were not specific to Belmont, including (i) that common issues would not predominate because of the necessity of individualized knowledge inquiries, and (ii) that materiality and causation could not be demonstrated on a class-wide basis. In light of the Court's conclusion that Belmont could not be appointed as class representative under Rule 23(a), it was not necessary for the Court to reach other grounds why class certification was unwarranted. Again, the happenstance of Belmont's lack of standing does not justify re-opening the briefing on these issues.

## II.    Mr. Silliman's Motion To Be Appointed Lead Plaintiff Should Be Denied

The CAC only asserts Securities Act claims, and Mr. Silliman's claims based upon the June 2008 offering are barred by the applicable statute of repose.  The lead plaintiff appointment stage is the appropriate time for the Court to address an applicant's standing.[9]  Here, Mr. Silliman has no standing to pursue the claims asserted in the CAC, and therefore cannot serve as a lead plaintiff with respect to them.

Section 13 of the Securities Act provides that "[i]n no event" may a plaintiff bring claims to enforce a liability "more than three years after the security was bona fide offered to the public, or . . . more than three years after the sale."  15 U.S.C. § 77m.  This Court has expressly ruled that this statute of repose creates an "absolute" bar to claims brought more than three years after the offering or sale at issue, and has squarely rejected the argument that the statute of repose is tolled by the filing of class claims by other purchasers.[10]  Many other courts have similarly stated that a repose period cannot be tolled.[11]  Just two days ago, for example, Judge Keenan issued a

---

[9]     See Fort Worth Emps.' Ret. Fund, 2012 WL 1788142, at *5 ("It is appropriate to address the standing issue at this point [appointment of substitute lead plaintiff] because its resolution will guide the parties in the lead plaintiff appointment process. . . ."); In re IndyMac Mortg.-Backed Sec. Litig., 793 F. Supp. 2d 637, 643-435 (S.D.N.Y. 2011) (Kaplan, J.), appeal docketed, Nos. 11-2998-CV & 11-3036-CV (2d Cir. July 21, 2011).

[10]     In re Lehman Bros. Sec. & ERISA Litig., 800 F. Supp. 2d 477, 481-83 (S.D.N.Y. 2011) (Kaplan, J.), appeal docketed, No. 11-1982-CV (2d Cir. May 13, 2011); In re Lehman Bros. Sec. & ERISA Litig., 799 F. Supp. 2d 258, 309-10 (S.D.N.Y. 2011) (Kaplan, J.); In re IndyMac Mortg.-Backed Sec. Litig., 793 F. Supp. 2d at 642-43. See also P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92, 102-103 (2d Cir. 2004) (in discussing timeliness of Section 12(a)(1) claim, finding that "a statute of repose begins to run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action.").

[11]     See, e.g., Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363, (1991) ("[A] period of repose [is] inconsistent with tolling"); McCann v. Hy-Vee, Inc., 663 F.3d 926, 930 (7th Cir. 2011) ("A statute of repose is strong medicine, precluding as it does even meritorious suits because of delay for which the plaintiff is not responsible."); Munoz v. Ashcroft, 339 F.3d 950, 957 (9th Cir. 2003) ("A statute of repose is a fixed, statutory cutoff date"); Jones v. Saxon Mortg., Inc., 537 F.3d 320, 326-27 (4th Cir. 1998) ("A statute of repose creates a substantive right in those protected to be free from liability after a legislatively-determined period of time"); Radford v. Gen. Dynamics Corp., 151 F.3d 396, 400 (5th Cir. 1998) ("tolling does not apply" to Section 413 of ERISA  because it "is a statute of repose"); Caviness v. Derand Res. Corp., 983 F.2d 1295, 1301 (4th Cir. 1993) ("[T]o adopt an interpretation that tolling principles should be applied to extend the three-year period of § 13 would require us to ignore the plain meaning of the language that says 'in no event' may an action be filed more than three

lengthy opinion holding that the "doctrine known as 'American Pipe tolling'" does not apply to a statute of repose including specifically the repose period in Section 13 of the Securities Act. Plumbers, Pipefitters, & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings, Ltd., No. 11 Civ. 5097 (JFK), 2012 WL 3283481, at *3 (S.D.N.Y. Aug. 13, 2012).  In so concluding, the Court considered Section 13's "plain language," the "legislative intent behind statutes of repose," and "Supreme Court and Second Circuit precedent in finding that statutes of repose are not subject to equitable tolling," id. at *4; see also id. at *4-5, and concluded that the "absolute language of the statute of repose plainly precludes judicial circumvention of the repose period, even in class action suits." Id. at *5.

Mr. Silliman's declaration (Dkt. No. 177, Attachment A) indicates that he bought his June 2008 offering shares on June 10, 2008.  Thus, his purchase of the June 2008 Securities and the offering itself took place more than four years ago.  Moreover, he is not now (and never has been) a party to this case.  See July Order ("Mr. Silliman [is not] a plaintiff in this case.").  He has never filed a complaint asserting any claim based upon the June 2008 offering, and has never moved to intervene in this action.  Indeed, he failed to do so even though almost 18 months ago it was apparent from the docket entries in this case that Belmont lacked standing.[12]

---

years after the sale and defeat the very purpose of a statute of repose"); Short v. Belleville Shoe Mfg. Co., 908 F.2d 1385, 1391 (7th Cir. 1990) ("Unless the 'in no event more than three' language cuts off claims of tolling and estoppel at three years, however, it serves no purpose at all"); Footbridge Ltd. Trust v. Countrywide Fin. Corp., 770 F. Supp. 2d 618, 624 (S.D.N.Y. 2011) (Castel, J.) ("It is settled that a federal statute of repose is not subject to equitable tolling.").  See also Albano v. Shea Homes Ltd. P'ship., 254 P.3d 360, 366 (Ariz. 2011) (filing of class action did not toll statute of repose for individual class members); Henderson v. Parks Homes, Inc., 555 S.E.2d 926, 929 (N.C. Ct. App. 2001) (same); Cacha v. Montaco, Inc., 554 S.E.2d 388, 392-94 (N.C. Ct. App. 2001) (same); Methodist Healthcare Sys. of San Antonio, Ltd. v. Rankin, 307 S.W.3d 283, 286 (Tex. 2010); Snyder v. Love, 153 P.3d 571, 573 (Mont. 2006); Farber v. Lok-N-Logs, Inc., 701 N.W.2d 368, 375 (Neb. 2005); Rudenauer v. Zafiropoulos, 837 N.E.2d 278, 281 (Mass. 2005); Langley v. Pierce, 438 S.E.2d 242, 243-44 (S.C. 1993).

[12]    Mr. Silliman's failure to move earlier may be due to the fact that the June 2008 Securities now trade, and for years have traded, above par.  As a result, should Mr. Silliman sell them, he will also immediately lose standing to pursue the claims he seeks to champion.

Under this Court's previous rulings, Mr. Silliman's claims are time-barred. As a result, he lacks standing to pursue Securities Act claims asserted in the CAC with respect to the June 2008 Securities, and therefore his request to be appointed as substitute lead plaintiff should be denied. Further, because there is no purchaser of the June 2008 Securities who can now bring timely Securities Act claims with respect to them, and because the claims with respect to the two 2007 offerings have already been dismissed, this action as a whole should now be dismissed.

## CONCLUSION

For the foregoing reasons, defendants request that Mr. Silliman's application to be appointed Lead Plaintiff be denied, and the case be dismissed.

Dated: New York, New York
August 15, 2012

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _Mitchell A. Lowenthal_

Mitchell A. Lowenthal
Matthew M. Bunda
Carolyn Chu
Danielle J. Levine

One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000

Attorneys for ING Groep, N.V., ING Financial Holdings Corporation, Stichting ING Aandelen, ING Financial Markets LLC, Michel J. Tilmant, Cees Maas, J. Hans van Barneveld, Eric F. Boyer, Eli P. Leenaars, Alexander H.G. Rinnooy Kan, Hans K. Verkoren, A.H.J. Risseeuw, Huib J. Blaisse, Paul M.L. Frentrop, Tom Regtuijt, and Jan J. M. Veraart.

SHEARMAN & STERLING LLP

By: _Adam S Hakki by MMB_

Adam S. Hakki
Christopher R. Fenton

599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000

Attorneys for UBS Securities LLC, Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Wachovia Capital Markets, LLC, Morgan Stanley & Co. LLC, Banc of America Securities LLC, RBC Capital Markets Corporation, J.P. Morgan Securities Inc., Credit Suisse Securities (USA) LLC, and HSBC Securities (USA) Inc.

11