UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MARSHALL FREIDUS, et ano.,

                            Plaintiffs,

                -against-                                    09 Civ. 1049 (LAK)

ING GROUP N.V., et al.,

                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

           This purported securities class action was brought by plaintiffs under Sections 11, 12, and 15 of the Securities Act of 1933 (the "1933 Act")[1] to recover damages allegedly sustained in connection with their investments of securities of defendant ING Groep N.V. that were sold in three offerings, two in 2007 and the third in 2008. The Court previously dismissed all claims with respect to the 2007 offerings and many of the claims with respect to that made in 2008.[2] Only one plaintiff, Belmont Holdings Corporation ("Belmont"), allegedly purchased in the 2008 offering, acquiring $10 million in principal amount of the perpetual hybrid capital securities (the "Securities"). Although plaintiffs initially were not forthcoming with the information, it eventually became clear that Belmont transferred all of the Securities it had purchased in the 2008 offering to an affiliate, Dicalite Management Group ("Dicalite") on August 18, 2009 in consideration of Dicalite's assumption of $10

---

[1]           15 U.S.C. §§ 77k, 77*l*, 77p.

[2]           *See* DI 115.

million of Belmont's liabilities to a third party, thus recovering its "original cost."[3]  The Court then denied plaintiffs' motion for class certification, reasoning that Belmont had been made whole, lacked standing to assert any claim, and in any case would not be an adequate representative of the alleged class.[4]  The matter now is before the Court on defendants' motion to dismiss for lack of subject matter jurisdiction on the ground that no plaintiff remains who has standing to pursue any of the claims asserted in the consolidated amended complaint.  Plaintiffs resists this relief, essentially by attempting to reargue points previously decided against it without even acknowledging the prior rulings.  Their arguments all are without merit.

1.      While the issues already have been decided and plaintiffs' time to challenge them arguably has lapsed, we will explain the prior ruling in more detail without in any way reopening them.  We begin with the basics.

Section 11 of the 1933 Act creates a private right in favor of a person acquiring a security offered pursuant to a false or misleading registration statement to recover:

> "the difference between the amount paid for the security . . . and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security . . . and the value thereof as of the time such suit was brought . . . ."[5]

Section 12 creates a somewhat different private right "to recover the consideration paid for such

---

[3]     Guzek Decl. [DI 171] ¶ 6.

[4]     DI 173.

[5]     15 U.S.C. § 77k(e).

3

security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."[6]  The measure of damages in circumstances such as these is "a return of the consideration paid, reduced by the amount realized when . . . the security [was sold] and by any 'income received' on the security."[7]

In this case, Belmont bought its securities for $10 million.  It then transferred them to Dicalite in consideration of Dicalite's assumption of $10 million of Belmont's liabilities.  Belmont does not suggest that the value of the securities at the time suit was brought was less than $10 million[8] or that it disposed of the securities "in the market before suit," so Sections 11(e)(1) and (2) have no bearing.  And the "price at which" the Securities were "disposed of after suit" concededly was the same as "the amount paid" for them.  So Belmont cannot recover under either Section 11[9] or Section 12.

2.    It is no answer to say, as plaintiffs do, that Belmont did not "dispose" of the Securities because it parted with them in an intercorporate transfer to a company under common ownership.  For whatever reason, Belmont elected to transfer all right, title, and interest it held in the securities in exchange for consideration it viewed, for whatever reason, as more attractive.  There is no sensible basis for saying that it may have the benefit of that transaction when the transaction suits its

---

[6]    *Id.* § 77*l*(a).

[7]    *Randall v. Loftsgaarden,* 478 U.S. 647, 655-56 (1986).

[8]    It does claim that the market prices of the securities in August 2009 was less than $10 million.  But this would be beside the point, as the date that is material was that on which the action was commenced in September 2009.

[9]    *See, e.g., In re Initial Pub. Offering Sec. Litig.,* 241 F. Supp.2d 281, 347 (S.D.N.Y. 2003) (dismissing § 11 claims of plaintiffs who sold their securities without a loss "because [they] have no damages").

4

purposes and ignore it when it does not.[10]  Moreover, plaintiffs' reliance on *Blau v. Mission Corp.*[11] and *International Controls Corp. v. Vesco*[12] in support of its position is misguided.

*Blau* was a short swing insider trading case in which the issue – insofar as plaintiffs rely on the case – was whether an intercorporate transfer within a single group constituted a "sale" for purposes of Section 16(b) of the Securities and Exchange Act of 1934 (the "1934 Act").[13]  As construing the transaction as a "sale" would not have served the purposes of Section 16(b) – the potential for abuse of inside information was unchanged by it – the Circuit held that it was not.  But the case does not inform the resolution of the question here, which is the entirely different matter of whether Belmont's election to part with its securities in exchange for consideration worth at least what it paid for them eliminated any claim for damages under Section 11.  There is nothing in *Blau* that suggests that Belmont should not bear the consequences of the transaction in which it voluntarily participated to gain whatever benefit it thus pursued.  And *ICC v. Vesco* is even farther afield.  The question in that case was whether a company's transfer of shares of one wholly-owned subsidiary to another should have resulted in a conclusion that the alleged failure by some directors to disclose information to other directors had satisfied the purchase or sale requirement of Section 10(b) of the

---

[10]

    For example, the point of having Dicalite assuming $10 million of Belmont's liabilities presumably was to remove those liabilities from Belmont's balance sheet or, at least, to make the prospect that Belmont would have to satisfy them more remote than would have been the case absent the transfer.  We do not understand Belmont to suggest that the separate corporate existences of it and Dicalite should be ignored for all purposes.

[11]

    212 F.2d 77 (2d Cir. 1954).

[12]

    490 F.2d 1334 (2d Cir. 1974).

[13]

    15 U.S.C. § 78p(b).

5

1934 Act and Rule 10b-5 thereunder.[14]

In short, as the Court held earlier, Belmont's transfer of the securities it allegedly purchased in the offering for consideration at least equal to what it paid for them eliminated any possible recovery by it in this case.  It thus lacks standing, both statutory and Article III, to proceed.[15]

3.      Plaintiffs finally argues that the case should not now be dismissed because some other putative class member someday might seek leave to intervene.  That argument too is without merit.

To be sure, there are circumstances in which courts should be slow to dismiss a putative class action merely because the named plaintiff or plaintiffs have proved to have no claim on the merits precisely to permit continuation of the case by another class member in the event a request to intervene appears.  But this is not such a case.  As defendants argue, the claim of any alleged class member who has not yet appeared is time barred, as was that of Mr. Silliman, whom plaintiffs evidently recruited to attempt to proceed with the case.  Well over three years have elapsed since the last offering originally at issue in this case in 2008.  Any claim by any putative class member would be barred by Section 13 of the 1933 Act.[16]

---

[14]

490 F.2d at 1343.

[15]

Plaintiffs' arguments premised on the tax treatment of intercorporate transfers has still less to do with the question whether Belmont has any possible basis for recovery.

[16]

15 U.S.C. § 77m.

6

      Defendants' motion to dismiss the action [DI 183] is granted in all respects.  The Clerk shall enter judgment and close the case.


      SO ORDERED.

Dated:      October 11, 2012


                              Lewis A. Kaplan
                          United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)